AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**

E-FILED
Tuesday, 27 November, 2018 12:06 PM
Clerk, U.S. District Court, ILCD

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
NOV 27 2018

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 18-MJ-__7180__
 )
information associated with markfire98@yahoo.com )
more particularly described in Attachment A )
 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

information associated with markfire98@yahoo.com more particularly described in Attachment A

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:2252 and 18:2252A | Child Pornography Trafficking |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT MICHAEL A. CARTER, FBI.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/MICHAEL CARTER

*Applicant's signature*

MICHAEL A. CARTER, Special Agent
*Printed name and title*

s/ERIC I. LONG

Sworn to before me and signed in my presence.

Date: ____11/27/2018____

*Judge's signature*

City and state: __Urbana, Illinois__

ERIC I. LONG, Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **markfire98@yahoo.com** THAT IS STORED AT PREMISES CONTROLLED BY **Oath Holdings Inc., formerly Yahoo Holdings, Inc.** | Case No. *18-MJ-7180* <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Carter, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Oath Holdings Inc., formerly Yahoo Holdings, Inc., an electronic communications service/remote computing and storage service provider headquartered at 701 1st Avenue, Sunnyvale, CA 94089.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Oath Holdings Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), assigned to the Springfield, Illinois, Division.  I have been employed as a Special Agent for the FBI since August 2016.  As part of my duties, I investigate violations of federal law relating the

online exploitation of children, including violations pertaining to the illegal possession, receipt, transmission, and production of material depicting the sexual exploitation of minors. Prior to becoming a Special Agent with the FBI, I was a Police Officer for the Johnson City Police Department in Johnson City, Tennessee, for approximately five years and three months. During my tenure, I investigated various misdemeanor and felony violations of law, and was the affiant on numerous state search warrants.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Mark Devries has possessed visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) ("child pornography") in violation of Title 18, United States Code, Sections 2252 and 2252A, and attempted to produce or produced visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in violation of Title 18, United States Code, 2251. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## STATUTORY AUTHORITY

6.    As noted above, this investigation concerns alleged violations of the following:

    a. Title 18, United States Code, Sections 2251(a) and (e) prohibit any person from knowingly employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

    b. Title 18, United States Code, Sections 2252(a)(1) and (b)(1) prohibit any person from knowingly transporting or shipping, or attempting or conspiring to transport or ship, any visual depiction using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer or mail, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

    c. Title 18, United States Code, Sections 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or

knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

d.  Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

e.  Title 18, United States Code, Sections 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing, or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

f.  Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

g.  Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

4

**BACKGROUND CONCERNING PROVIDER**

7.     Oath Holdings Inc., formerly Yahoo Holdings, Inc., is an electronic communications service (commonly referred to as "e-mail"). In my training and experience, I have learned that providers such as Oath Holdings Inc. provide a variety of online services, including e-mail access, to the public. Oath Holdings Inc. allows subscribers to obtain e-mail accounts at the domain name Yahoo.com, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with Oath Holdings Inc. Providers such as Oath Holdings Inc. generally ask subscribers to provide basic personal information During the registration process. Therefore, the computers of Oath Holdings Inc. are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for Oath Holdings Inc. subscribers) and information concerning subscribers and their use of Oath Holdings Inc. services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

8.     Providers such as Oath Holdings Inc. often allow subscribers to store files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by the provider. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

9.     In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

10.     In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

11.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such

as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

12.     As explained herein, information stored in connection with an e-mail account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an e-mail account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the e-mail provider can show how and when the account was accessed or used. For example, e-mail providers typically log the IP addresses from which users access the e-mail account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the e-mail account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an

7

image or video sent via e-mail). Last, stored electronic data may provide relevant insight into the e-mail account owner's state of mind as it relates to the offense under investigation. For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

13.     In addition to e-mail service, Oath Holdings Inc. also provides remote computing and storage service (commonly referred to as "cloud services"). In my training and experience, I have learned that providers of remote computing and storage services allow subscribers to store files, such as photos or videos, on the servers of the provider. In general, providers like Oath Holdings Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number). Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

8

## THE INVESTIGATION

14.     On 05/31/2018, a Special Agent with the Salt Lake City, Utah, Federal Bureau of Investigation ("SLC-FBI"), acting in an undercover ("UC") capacity, posted numerous online bulletin messages on specific social media forums. Based on your affiant's training and experience, as well as consultation with other law enforcement agents who specialize in investigating violent crimes against children, these websites and social media forums are frequented by individuals who have a sexual interest in children and incest. The bulletin messages were intended to attract individuals with a sexual interest in children. The UC also responded to certain messages or posted messages on these public forums and provided his UC online mobile application screen name on "Application A."[1] "Application A" is designed for mobile chatting or messaging. This free mobile application permits users to send text messages and other content, including videos and images. To use this application, a user downloads the application to a mobile phone or other mobile device via a service such as Google Play Store, Apple iTunes, or another similar provider. Once downloaded and installed, the user is prompted to create an account and username. The user also has a display name, which is what other users see when transmitting messages back and forth. Once the user has created an account, the user is

---

[1] The actual name of "Application A" is known to law enforcement.  This chat application remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the application will be identified herein as "Application A."

able to locate other users via a search feature, and the two parties can then send each other messages, images, and videos.

15.    "Application A" users are also able to create chat groups, of up to 50 people, to communicate in a group setting and exchange images and videos. These groups are administered by the group creator who has the authority to remove and ban other users from the created group. Once the group is created, "Application A" users have the option of sharing a link to the group that includes all of their contacts or any other user. These groups are frequently created with a "hashtag" that is easily identifiable or searchable by keyword.

16.    On May 31, 2018, an individual with the "Application A" profile name "markhunter987" answered the UC's advertisement, by sending an "Application A" message. The following is a summary of the "Application A" chats that followed with "markhunter987":

**markhunter987: Hey**

UC: Hey, what r u into? I'm no limit

**markhunter987: Anything**

UC: hot, I'm a 38 yo dad with a 9 yo dau, Utah, USA

**markhunter987: I fuck my daughter she's 15**

UC: mmm, nice r u active now?

**markhunter987: Her**

**markhunter987: And yes**

**markhunter987: *[Video sent of a close up view of a female (age difficult) rubbing her vaginal area. The female is wearing underwear with a cartoon figure on the front, possibly Rudolph the Red Nosed Reindeer.]***

**markhunter987: Hbu**

10

UC: yes active, mainly oral, i don't have her all the time though

UC: r u American mate?

**markhunter987: Me either**

**markhunter987: Yes**

UC: nice, did u ever take pics of your dau?

**markhunter987: Mine let's me do whatever I want u just buy her stuff in return**

**markhunter987: Mostly vids**

**markhunter987: U have any pics**

UC: I do, but i have to be careful

**markhunter987: I'm cool**

UC: is this fantasy for u?

**markhunter987: No hbu**

UC: this is real, I have some pics I'm open to sharing, I just like to confirm people r legit

**markhunter987: I'm legit**

**markhunter987: *[Video sent of a close up view of a female (age difficult) rubbing her vaginal area. This appeared to be the same female and setting as the first video. However, in this video the female is not wearing any underwear.]***

UC: whats the yungest u have?

**markhunter987: Not sure**

UC: i like 0-9

**markhunter987:  All 8 or above**

**markhunter987: Can you send something so I know your legit**

UC: i have links

**markhunter987: send one**

UC: *[Image sent of the face and torso area of what appears to be a 9 year old child. *Image was not a real person.]*

UC: *[Image sent of the face and torso area of what appears to be a 9 year old child. A persons hand is in the middle of the picture holding up 4 fingers. *Image was not a real person.]*

**markhunter987: Any of u playing with her**

UC: i have those

UC: the vids u sent dont look like a 15 yo girl

**markhunter987: she is**

UC: hmm, anything ynger?

17.     An administrative subpoena was sent to "Application A" for subscriber information associated with username "markhunter987." "Application A's" response provided the first name "M," the last name "D," an unconfirmed e-mail address of markfire98@yahoo.com. Also included in the response was IP access logs between May 8, 2018 and June 3, 2018. FBI personnel examination of the IP access logs from "Application A" indicated the subject regularly accessed this account via a device connected to a network with an assigned IP address of 71.239.167.135. This IP address was determined to belong to Comcast. SLC-FBI personnel issued an administrative subpoena to the Comcast legal department, who identified the subscriber of IP address 71.239.167.135, as Gloria Kozora, with a service address of 280 Raven Dr., Apt 1B, Manteno, Illinois 60950. This IP address was assigned to the Comcast Account on April 6, 2018, and was still active for the account at the time of the administrative subpoena.

18.     Upon receipt of this information, SLC-FBI used available commercial, law enforcement sensitive and open source databases to tentatively identify the user of "Application

A" account markhunter987 as Mark C. Devries, date of birth October 31, 1978. A social network profile which belonged to Devries was located on Facebook (www.facebook.com/mark.devries.98).

19.     On August 9, 2018, the FBI executed a residential search warrant, issued in the Central District of Illinois, at the residence of Devries, 280 Raven Dr., Apt 1B, Manteno, Illinois 60950. During the search warrant execution, two (2) electronic devices were seized for further analysis. On one of these devices, "Application A" was discovered, and was found to be operating under the username of markhunter987. The e-mail address associated with the "Application A" account was markfire98@yahoo.com. During further analysis of the device, examiners located what was believed to be child pornographic material in the form of thumbnail images. One of these images was described by the examiner as a naked minor female, approximately ten (10) years old, with her legs spread and an adult male's penis in her mouth.

20.     Also during the execution of the residential search warrant, Devries was interviewed. During the interview, Devries admitted that he was the participant in the "Application A" chat that was transcribed earlier in this affidavit. When asked about the videos that he sent during the chat, he stated that they were not of his daughter (stated he did not have a daughter), but did state that he thought they were of a fifteen (15) year old female. Furthermore, Devries went on to state that he used "Application A" approximately once per month in order to exchange child pornographic material with other users. Specifically, Devries explained that he would chat with individuals who he believed were fifteen (15) year old girls, and he would ask them to send pornographic images of themselves. In return for the material received, Devries would send nude photographs of himself and of his penis. Devries also stated that he would chat

13

with individuals who he believed were fifteen (15) year old boys and solicit them to trade pornographic images of themselves. Devries would then use the images from the boys in order to have additional material to exchange with other users. Devries admitted to interviewers that he was interested in children as young as eight (8) years old, and noted that it was a fantasy for him.

21.     Following the execution of the search warrant at Devries' residence, writer located Meghan Matyasec (Devries' estranged wife). Though legally married, the couple had been separated since approximately 2015 when Matyasec located obscene material relating to juveniles on Devries' cell phone. One example of this material was described by Matyasec as being child pornography of a sixteen (16) year old female. She further explained that she located the material in Devries' Yahoo Dropbox, a cloud storage account. Matyasec confronted Devries about the material, and he admitted to her that he had been in a relationship with the sixteen (16) year old for approximately one (1) year.  Also, before the couple separated, Matyasec located another conversation on Skype in which Devries was text chatting with an individual claiming to be a twelve (12) year old female. The conversation was sexually explicit in nature and involved Devries describing sex acts he wanted to perform with the juvenile, as well as him requesting nude photos from the juvenile. Matyasec took screen-shots of the conversation when she located it in order to turn them over to law enforcement personnel.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

22.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Oath Holdings Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

## CONCLUSION

23.     Based on the forgoing, I request that the Court issue the proposed search warrant.

## REQUEST FOR SEALING

24.     Your Affiant further request that the Court order that all papers in support of this

application, including the affidavit and search warrant, be sealed until further order of the Court.

These documents discuss an ongoing criminal investigation that is neither public nor known to

all of the targets of the investigation.  Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,
s/MICHAEL CARTER


Michael Carter
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on this _27_ day of November, 2018.

s/ERIC I. LONG


Eric I. Long
United States Magistrate Judge

15

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with **markfire98@yahoo.com** that is stored at premises owned, maintained, controlled, or operated by Oath Holdings Inc., formerly Yahoo Holdings, Inc., a company headquartered at 701 1ST Avenue, Sunnyvale, CA 94089.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Oath Holdings Inc., formerly Yahoo Holdings, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Oath Holdings Inc., regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Oath Holdings Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Oath Holdings Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     All records and content associated with the account from the dates of **January 1, 2014 through present**, including from e-mail, remote computing/storage (cloud) services, and chatroom services.

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized by the user;

d.      All records or other information stored by an individual using the account

e.      All records pertaining to communications between Oath Holdings Inc. and any person regarding the account, including contacts with support services and records of actions taken.

f.      All records of any account associated with or connected with this account, including a recovery email address or alternative user name.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

2

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A, & Title 18, United States Code, 2251 involving Mark C. Devries since January 1, 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Any images or videos which would be considered child pornography or child erotica; any information relating to conversations with other individuals regarding the possession, exchange, or production of child pornography or child erotica; any information relating to conversations with juveniles or people claiming to be juveniles;

(b) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(c) User attribution information to connect the user of the account to an actual person though analysis of their other activities on the account.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Oath Holdings Inc., and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Oath Holdings Inc.. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Oath Holdings Inc., and they were made by Oath Holdings Inc.as a regular practice; and

b.      such records were generated by Oath Holdings Inc. electronic process or system that produces an accurate result, to wit:

1.      The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Oath Holdings Inc. in a manner to ensure that they are true duplicates of the original records; and

4

2.      the process or system is regularly verified by Oath Holdings Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                 Signature

5